IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| SCOTT N. SWANSON, | § | |
| | § | |
| Plaintiff, | § | |
| | § | Civil Action No. 3:20-cv-3177 |
| vs. | § | |
| | § | |
| SOUTHERNCARLSON, INC., | § | |
| | § | |
| Defendant. | § | JURY TRIAL DEMANDED |

### PLAINTIFF'S ORIGINAL COMPLAINT

TO THE HONORABLE JUDGE OF SAID COURT:

Now comes Plaintiff, Scott N. Swanson ("Swanson" or "Plaintiff") and files this his Original Complaint against SouthernCarlson, Inc. ("SCI" or "Defendant") and in support thereof would show the Court as follows:

### I.

### Introduction

1.01   Plaintiff would show that he was wrongfully discharged in violation of the Age Discrimination in Employment Act of 1967 (the "ADEA"), and due to disability discrimination in violation of the Americans with Disabilities Act (the "ADA"). He asserts similar claims under state law.

### II.

### Parties

2.01   Swanson is an individual currently residing in the State of Texas.  He may be contacted through the undersigned counsel.

2.02   Defendant SouthernCarlson, Inc. is a foreign corporation with its headquarters located at 10840 Harney St., Omaha, NE 68154 according to records filed with the Texas Secretary of State.  Defendant may be served with process by service upon its registered agent for service in the State of Texas, Business Filings Incorporated, 701 Brazos St., Suite 720, Austin, TX 78701.

## III.

## Jurisdiction and Venue

3.01   Pursuant to 28 U.S.C. §1331, jurisdiction of this Court is appropriate in the United States District Court for the Northern District of Texas, as this action involves a question of the application of federal law.  The trial court has supplemental jurisdiction over Plaintiff's state law claims.

3.02   Venue for all causes of action stated herein lies in the Northern District of Texas because Title VII includes a specific venue provision that states in relevant part:

> Each United States district court and each United States court of a place subject to the jurisdiction of the United States shall have jurisdiction of actions brought under this subchapter.  Such an action may be brought in any judicial district in the State in which the unlawful employment practice is alleged to have been committed, in the judicial district in which the employment records relevant to such practice are maintained and administered, or in the judicial district in which the aggrieved person would have worked but for the alleged unlawful employment action....

42 U.S.C. §2000e-5(f)(3)(emphasis added).  Since all or part of the events complained of herein occurred within the State of Texas, venue is proper in the Northern District of Texas.

## IV.

## Factual Allegations

4.01    Plaintiff worked for Respondent from January 1991 through April 13, 2020, a period of approximately 29 years. His final position was Purchasing Manager, South Central

**Plaintiff's Original Complaint**                                                                                                                      **Page  2**

Division. He was 70 years old at the time of termination, and he reported to Stephanie Kalie starting in approximately January '18.

4.02    Plaintiff had been diagnosed with heart disease, and experienced a heart attack in 2003. His medical condition worsened with an Occipital Lobe Stroke while driving in February 2016, which led to an accident and hospital stay from February 29-March 2, 2016.  Follow up test results showed a low ejection factor and possible v-fibs in late 2016.  He was diagnosed with having a high risk of SDS (Sudden Death Syndrome) in January 2017, and received a dual node defibrillator implant.

4.03    Plaintiff had two incidents in October and November 2018 where the device activated, and following an appointment learned from his doctor he could not drive until May 22, 2019 due to regulations governing defibrillated patients and their ability to drive.  He requested a reasonable accommodation allowing him to work from home three days per week, and was confirmed as having SDS.

4.04    The device triggered again on February 22, 2019, meaning the automatic 6 month medical driving restriction would be in place until August 22, 2019.  Plaintiff contacted Stephanie Kalie to advise her, and she expressed hostility, and indicated the "work at home" 3 days per week accommodation would not be extended past August 22, 2019. An additional hospital stay was required on March 8, 2019 for two stents to open a clogged artery.

4.05    Plaintiff attempted to contact HR to discuss the situation and potential FMLA leave qualification, but could never get a response. He never received FMLA documentation for his doctor to complete in relation to his medical leave. He did notify Stephanie he would need time off to conduct 36 cardiac rehabilitation sessions. These were scheduled on the MWF days when he worked from home early in the morning, and he then worked later to make up the lost

**Plaintiff's Original Complaint**                                                                                                   **Page  3**

time.

4.06	An ablation surgery was performed on June 28, 2019, but was not fully successful. The cardiac rehab program ended, and Plaintiff then moved to a continuing rehab near his home.

4.07	In August 2019, Plaintiff suffered shortness of breath, and received a new implant CRTD (Cardio Resynchronization Therapy Defibrillator).  At that point, his heart became device dependent. Plaintiff was unable to return to work onsite full-time pending recovery, and Kalie showed her irritation by cutting him off and refusing to listen to a description of his medical condition.  Kalie also expressed hostility when Plaintiff requested time off for follow up device calibration and medical procedures in the company's Day Force software.

4.08	In November 2019, an employee in Plaintiff's department resigned.  Kalie insisted Plaintiff physically come to work every day, and Plaintiff moved to a location much nearer to work to comply despite his doctor's recommendation of continued work from home.

4.09	In January 2020, Plaintiff's fatigue and shortness of breath worsened. A device recalibration helped, but he was referred for a full physical. He was discovered to be severely anemic following an exam in late February, and a colonoscopy was recommended, along with iron infusion treatments.

4.10	In March 2020, the "shelter at home" orders were issued. Plaintiff's physician advised he should work only from home. A colonoscopy and endoscopy was scheduled for March 23, and iron infusions for March 25 and April 13.  Kalie complained vociferously about the use of PTO by another employee (Lacee Jarvis), and then fired Plaintiff moments after he requested approval of time off for the iron infusion. Kalie said that because they had terminated Lacee's employment, they would be terminating Plaintiff's as well.

4.11   Following his termination, Plaintiff enrolled for COBRA insurance continuation benefits. Despite charging full premiums, Defendant has failed to pay claims at the same rate as younger workers under the plan, and instead tried to pay only the same benefits as would be provided under a Medicare supplement plan.  Plaintiff was not enrolled in Medicare until recently, and has been billed for the full amount by his health care providers. Defendant is self-insured under its benefit Plan, with a third party administrator, and therefore is liable for the pertinent medical claims.

## V.

## First Count

### Age Discrimination

5.01   Plaintiff incorporates the foregoing provisions as though set forth herein verbatim.

5.02   Plaintiff is an individual who was approximately seventy (70) years of age at the time of termination, and who was perceived by Defendant as being unable to perform his duties because of his age.

5.03    Defendant employs in an industry affecting interstate commerce twenty (20) or more employees for each working day in each of twenty (20) or more weeks in the current or preceding calendar year.  Accordingly, it is subject to the provisions of the ADEA as well as the Texas Labor Code (which requires only 15 employees).  Plaintiff is qualified to perform the essential functions of his former job.

5.04   Defendant has intentionally discriminated against Plaintiff because of his age by exhibiting bias toward Plaintiff, treating Plaintiff in a discriminatory manner compared with his younger peers, refusing to pay claims, and discharging Plaintiff.

5.05   Plaintiff has filed a charge of discrimination with the EEOC, and received at

"right to sue" letter.  He has also requested and received a state "notice of right to file civil action" letter from the TWC.

     5.06    Defendant engaged in a single continuous course of conduct of discrimination against Plaintiff because of Plaintiff's age, and because Plaintiff complained about such discrimination.

     5.07    Such discrimination by Defendant against Plaintiff was intentional.  Accordingly, Plaintiff is entitled to recover damages from Defendant for back pay, front pay, benefits, future pecuniary losses, emotional pain and suffering, inconvenience, loss of enjoyment of life, other non-pecuniary losses and compensatory damages under state law.  Further, this discrimination was willful.  Plaintiff is therefore also entitled to recover liquidated damages under federal law.  Plaintiff is also entitled to recover all costs of court and attorney's fees.

## VI.

## Second Count

### Disability Discrimination

     6.01    Plaintiff incorporates the foregoing paragraphs by reference as if set forth verbatim herein.

     6.02    Defendant employs more than fifteen employees, and is an "employer" within the meaning of the ADA and the TCHRA.  Plaintiff filed a charge of discrimination with the EEOC and has since received a "right to sue letter."  Plaintiff files this action within 90 days of actual receipt of his "right to sue" letter.  He has requested from the TWC a letter authorizing a civil action.

     6.03    Plaintiff suffers from a disability under the statutory definition provided in the ADA and under the TCHRA because Plaintiff had an actual impairment, a record of impairment,

and/or was regarded as having impairment by Defendant.  Plaintiff actually had or was regarded as having a disability that substantially limited one or more major life functions, including cardiovascular functioning and work.

6.04    Plaintiff was and is a qualified individual for the job in question.  With reasonable accommodations, Plaintiff can and did perform the essential functions of his job. Defendant refused to engage in good faith in the interactive process with Plaintiff to determine reasonable accommodations, and fired him rather than provide accommodations including using sick leave for flareups and doctor visits. The requested accommodations would not have been an undue burden on Defendant, given it was allowing most of the rest of its workforce to work remotely due to the Covid-19 lockdown orders.

6.05    An adverse employment action was taken against Plaintiff on account of his disability, because he was ostensibly fired for attendance as a reason, and after having formally requested accommodations, including medical leave for his treatment.

6.06    Plaintiff was treated less favorably than non-disabled employees.

6.07    Defendant violated the ADA and state law by discharging Plaintiff and/or discriminating against Plaintiff in connection with compensation, terms, conditions or privileges of employment because of Plaintiff's record of, actual or perceived disability.

6.08    Such discrimination by Defendant against Plaintiff was intentional.  Accordingly, Plaintiff is entitled to recover damages from Defendant for back pay, front pay, past and future pecuniary losses, emotional pain and suffering, inconvenience, loss of enjoyment of life, and other non-pecuniary losses.  Further, this discrimination was done with malice or with reckless indifference to Plaintiff's protected rights.  Plaintiff is therefore also entitled to recover punitive damages.

6.09   Plaintiff is entitled to an award of attorney's fees, expert fees, and costs under the ADA and state law.

## VII.

## **Jury Trial Demanded**

7.01   Plaintiff hereby demands trial by jury of all claims to which he is entitled.

WHEREFORE, PREMISES CONSIDERED, Plaintiff prays that Defendant be cited to appear and answer herein, and that upon final trial, Plaintiff have and recover the following relief against Defendant:

1. Judgment for actual damages in the amount of past and future lost earnings and benefits, damages to past and future earnings capacity, and past and future damage to reputation;

2. Judgment for past and future pecuniary losses, emotional pain and suffering, inconvenience, loss of enjoyment of life, and other non-pecuniary losses;

3. An award of liquidated and/or statutory damages in an amount equal to all lost wages, salary, employment benefits and privileges, and other compensation lost as a result of Defendant's wrongful conduct in an amount proven at trial;

4. An order by the Court reinstating Plaintiff as an employee of the Defendant in a similar position with similar pay and benefits to that from which he was wrongfully terminated, or, in the alternative, future pay in an amount to be determined by the Court;

5. Prejudgment and post-judgment interest at the maximum legal rate;

6. Attorney's fees;

7. Expert fees;

8. All costs of court; and

9. Such other and further relief to which Plaintiff may be justly entitled.

DATE: October 19, 2020.

Respectfully submitted,

**KILGORE & KILGORE, PLLC**

By: /s/ *John H. Crouch, IV*

JOHN H. CROUCH, IV
State Bar No. 00783906
jhc@kilgorelaw.com

3109 Carlisle, Suite 200
Dallas, TX  75204
(214) 969-9099 - Telephone
(214) 953-0133 - Fax

**ATTORNEYS FOR PLAINTIFF,
SCOTT SWANSON**